## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED

DEC 2 6 2007

Michael N. Milby, Clerk

| | | |
|---|---|---|
| **GEORGE R. NEELY,** | § | |
| | § | |
| **PLAINTIFF,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. _____** |
| | § | |
| | § | **H-07 -4517** |
| **STATE BAR OF TEXAS, COMMISSION** | § | |
| **FOR LAWYER DISCIPLINE, J.G.** | § | |
| **MOLLESTON, TIMOTHY R. BERSCH,** | § | |
| **VIRGINIA PLOCH AND THE HONORABLE** | § | |
| **JACK H. ROBISON,** | § | |
| | § | |
| **DEFENDANTS.** | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT AND APPLICATION FOR INJUNCTIVE RELIEF

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES GEORGE R. NEELY , Plaintiff herein, complaining of State Bar Of Texas, Commission For Lawyer Discipline, J.G. Molleston, Timothy R. Bersch, Virginia Ploch and The Honorable Jack H. Robison, Defendants herein, and for causes of action in connection therewith would show unto the Court as follows:

### Parties

1.      Plaintiff is domiciled in Rosenberg, Fort Bend County, Texas.

2.      Defendant State Bar Of Texas., ("State Bar") is an administrative agency of the judicial branch in Texas with its principal place of business at 1414 Colorado St., Austin, Texas and at which summons can be served on the President of the State Bar.

3. Defendant Commission For Lawyer Discipline ("CFLD") is a permanent committee of the State Bar Of Texas administered by the Supreme Court Of Texas and may be served with summons herein through Betty Blackwell, the Chair of the CFLD at 1306 Nueces Street, Austin, Texas 78701-1722..

4. Defendant J.G. Molleston ("Molleston") is an attorney employed by State Bar and CFLD and upon whom summons herein may be served at 600 Jefferson Street, Suite 1000, Houston, Texas 77002.

5. Defendant Timothy R. Bersch ("Bersch") is an attorney employed by State Bar and CFLD and upon whom summons herein may be served at 600 Jefferson Street, Suite 1000, Houston, Texas 77002.

6. Defendant Virginia Ploch ("Ploch") is a domicile of Houston, Harris County, Texas and may be served with summons herein at 10311 Sagerock Dr., Houston, Texas 77089.

7. Defendant The Honorable Jack H. Robison ("Judge Robison") is the Judge of the 207th Judicial District Court of Comal County, Texas, appointed by the Supreme Court Of Texas to preside over Cause No. 2003-63182, pending in the 164th Judicial District Court Of Harris County, Texas, and upon whom summons herein may be served at 150 N. Seguin, Suite 317,New Braunfels, Texas 78130.

## Jurisdiction and Venue

8. Jurisdiction and venue in the Southern District of Texas, Houston Division, of the causes of action asserted herein are predicated on the following:

a. Venue generally pursuant to 28 U.S.C. § 1391(a)(b)(c) and (d). The Southern District of Texas, Houston Division is the district in which a

substantial part of the events or omissions giving rise to the claims occurred and is a district in which any defendant may be found.

b.    Jurisdiction pursuant to 28 USCA §§ 1331 and 1343 for the causes of action asserted herein pursuant to 42 USCA §1983 (14th Amendment deprivation of due process and equal protection of law) and 42 USCA §§ 1985 and 1986 (conspiracies to interfere with civil rights) and neglect to prevent conspiratorial wrongs in connection with litagation.

c.    Plaintiffs assert that this Court Also has pendant jurisdiction over the State Common Law and statutory claims asserted herein.

### Factual Background

9.    During the Summer of 2002, Respondent terminated Ploch from his employment for violating firm confidentiality policies. Although she did not have permission to enter Respondent's office, she did so after she was terminated and, without Respondent's knowledge and/or permission, stole a number of things, including financial records including copies of checks. See the Houston Police Department reporting receipt and offense report attached to the affidavit of Plaintiff and submitted herewith. Thereafter, Plaintiff sued Ploch and her husband for fees owed Plaintiff for handling a case for Ploch's husband. During litigation with Ploch and her Husband, Plaintiff obtained copies of **Ploch's e-mails**, submitted with Plaintiff's affidavit, which chronicle her hatred for Plaintiff and **a desire to "... take George down anytime"**, and encouraging Ms. Mary Ann Knezek, Plaintiff's former  client, to take a tape recorder to meetings with Plaintiff and tape conversations for their future use in their conspiracy to destroy Plaintiff's practice of law. Also attached to Plaintiff's affidavit are certified copies of Ms. Knezek's affidavits filed in

state court proceedings indicating that , inter alia, Ploch had secreted a key to Plaintiff's office she used to gain access to Plaintiff's office to steal bank records and copies of checks after she was terminated. See also attached to Plaintiff's affidavit Ms. Knezek's e-mails to Ploch documenting their joint desire to prosecute grievances against Plaintiff. See also a letter from Ms. Knezek to the State Bar Of Texas in October of 2002 concerning Ploch's theft of Plaintiff's bank records and checks. Based on the affidavits of Ms. Knezek and other evidence, Judge Tony Lindsay entered a Temporary Restraining Order ("TRO") precluding Ploch from having, using and divulging confidential documents and information she removed from Plaintiff's office. Ploch gave State Bar Plaintiff's stolen documents in connection with a grievance she filed against Plaintiff in about August 2002.

10.   In September of 2002, Plaintiff sent State Bar a letter requesting the return of his stolen bank records.  Again, in October of 2002, Plaintiff furnished Mr. Leo Suter with State Bar a copy of the TRO precluding the Ploch's and anyone acting by and through them from using, having and divulging the content of the documents stolen from Plaintiff's office and requested the return of Plaintiff's records. The stolen documents were never returned by State Bar.

11.   Based on the stolen documents and other divulged confidential information, the subject of the TRO, CFLD filed Cause No. 2003-63182 ("the action") against Plaintiff on November 17, 2003, over 4 years ago. Said lawsuit was not prosecuted between the summer of 2004 and April of 2007, principally, based on Plaintiff's Frost National Bank records being improperly obtained by Molleston without giving proper notice under the Texas Rules Of Civil Procedure ("TRCP") of the subpoena served on Frost National Bank( Rules 21, 21a, 21b and 205; as well as Rule 176 pertaining to the use of subpoena's), resulting in their exclusion under relevant Texas case law.

12.   In January of 2004, Mollestron/CFLD served a request for production of documents on Plaintiff seeking certain IOLTA bank account records. Plaintiff filed an objection to the document production requested. Molleston sent Plaintiff a letter stating that if Plaintiff did not agree to a compromise on the document production issue, he would promptly file a motion to compel. See his attached letter of February 12, 2004. He did not file any such motion, since he knew he would have been required to go Judge Evans, seeking production of the Bank records based on information contained in bank records stolen by Ploch and the subject of a TRO precluding the use of same. He knew that Judge Evans would not only deny the motion to compel, but that the claims, based on the stolen records, would be dismissed because of the **fruit of the poisonous tree doctrine,** later referred to by Judge Robison on September 10, 2007. Judge Robison replaced Judge Evans in October of 2004. So, instead, he decided to issue a secret bogus "subpoena" to Frost National Bank to obtain Plaintiff's IOLTA bank account records for the time period of from the Summer of 2001to the Summer of 2002. See the attached "subpoena" served by Molleston via mail and not filed with the Court and for which no officers return was executed and filed with the court, as required by the Texas Rules Of Civil Procedure. Also, he intentionally refused to give notice of same, as required by Rules 21, 21a, 21b and 205, TRCP, for had he done so, a motion to quash would have been filed and he would be back to square one facing Judge Evans with stolen documents precluded by the TRO. So, Molleston's decision to serve the secret and sham "subpoena" was calculated and intentional. The legal flaws of the "subpoena" and its use preclude it from even qualifying as a "subpoena" of the Court, which would be the judicial authority Molleston would need to legally obtain Plaintiff's bank records. Ergo, he obtained Plaintiff's IOLTA bank records illegally, unconstitutionally, and had possession of them without legal authority. Later, when

it was discovered that he had obtained the Bank records from Frost National Bank, he
claimed that §59.006 of the Texas Finance Code allowed Molleston/CFLD to obtain the
records without giving Plaintiff his constitutional due process notice of same. Judge
Robison has held that §59.006 of the Texas Finance Code is not applicable to the manner
in which Molleston/CFLD obtained Plaintiff's bank records (see *British International
Insurance Company, LTD v. Seguros La Repubiica, S.A. 200 F.R.D. 6 (W.D. Tex 2000)*)
and has also held that Molleston/CFLD was required to give Plaintiff notice of the
"subpoena" served on Frost National Bank, pursuant to Rules 21, 21a, 21b and 205,
TRCP. Thus the exclusion rule for wrongfully obtained discovery(separate and apart from
it being based on knowledge obtained from stolen records from Plaintiff's office)
applies and prevents Plaintiff's bank records from being used by State Bar and CFLD.
Plaintiff's IOLTA bank records were unconstitutionally obtained and used in violation of
Plaintiff's Civil Rights asserted herein.

13.   In January of 2003, the litigation with **the Ploch's settled,** and they signed a
settlement agreement,  in which they **agreed that they would return all of the
documents "...taken from George Neely's office...",** which is further proof that the bank
records given State Bar by Ploch were stolen from Plaintiff and subject to the TRO, which
explains why CFLD would not use them. The checks being stolen, as well as the
information contained therein, precludes the use of both Plaintiff's IOLTA bank records
wrongfully obtained by CFLD/Molleston and the checks stolen from Plaintiff's office, all
being obtained in violation of Plaintiff's constitutional rights to his confidential bank records
and due process rights in a judicial proceeding and in connection with discovery from third
parties, as well as equal protection under the law. The Ploch's also signed the attached
letters to State Bar stating that they had settled their litigation with Plaintiff and settled all

issues and no longer wished to pursue their complaint against him. The attached letter from Judge David West submitted herewith pertains to and complied with the provision of the **settlement agreement whereby the Ploch's agreed they would return the copies of the checks taken from Respondent's office**, which are the same checks given State Bar by Ploch, once again subject to the TRO.

14. On September 10, 2007, when the action was called to trial, Judge Robison concluded that CFLD was required to give Plaintiff notice of the discovery "subpoena" served on Frost National Bank for  IOLTA account records and that if they did not, the documents would be suppressed and excluded for non-compliance with the rules of civil procedure. He said that they were the fruit of the poisonous tree. That being the case, Judge Robison continued, Plaintiff would not have been required to give his deposition and there would be no trial. See the attached excerpts from the record of September 10, 2007.

15. When the action reconvened on October 17, 2007, Judge Robison stated that he was going to allow CFLD to use the Frost National Bank records, and grant CFLD's motion for summary judgment and that Plaintiff would be allowed to appeal the matter. At that time CFLD requested that Judge Robison disbar Plaintiff.  Plaintiff was not aware at that juncture that Ploch had sent an exparte letter to Judge Robison on October 11, 2007, just before the hearing in an attempt to persuade him to change his exclusion ruling of September 10, 2007. The materials sent to Judge Robison by Ploch were outside the record of the action and included copies of pleadings in a bankruptcy adversary that Ploch would have only known about through Molleston and Bersch. Further, after over 4 years of silence by Ploch, it was on the eve of the final hearing for the exclusion of the Bank records that Ploch sent the exparte material to Judge Robison, Molleston, Judge Karen Brown, Judge Wes Steen and Judge Sim Lake. She could only have learned of the hearing

date from Molleston and/or Bersch. Ploch's exparte letter and attached material had been sent to both Judge Robison and Molleston at State Bar via mail and faxed as well on October 11, 2007. Neither Judge Robison nor Molleston mentioned the exparte communication intended to influence the Judge on the exclusion issue. At the October 17,2007 hearing, Judge Robison made several comments which could only be explained by reference to the exparte letter and attachments. Everyone at the October 17, 2007 hearing, other than Plaintiff, knew of the improper exparte communication with Judge Robison. After Plaintiff learned of the exparte communication, he requested a complete copy of same from Judge Robison. Consequently, Plaintiff was forced to file a motion to recuse Judge Robison. No judgment has been entered in the action.

16. This is not the first occasion on which Plaintiff has been compelled to sue State Bar, CFLD and attorneys employed by them. See Plaintiff's affidavit and exhibits describing his wrongful suspension in 1997 and the malicious conduct of the State Bar and CFLD attorneys which resulted in the filing of Cause No. 97-51928. The hostility against Plaintiff by State Bar and CFLD began when Plaintiff defeated CFLD in his first trial with CFLD in 1994. A high official from Austin, Texas and the Chief Disciplinary Counsel's Office "got in Plaintiff's face" and very rudely told Plaintiff that they were going to do what ever they had to do to take Plaintiff's license. Plaintiff thereafter was the subject of grievances and lawsuits which would not have been prosecuted against anyone but him, due to the personal animosity of State Bar and CFLD toward him. The same scenario is happening in connection with the action, because Molleston, recently promoted to Regional Counsel, is concerned about the ramifications of him improperly obtaining Plaintiff's Bank Records and a potential civil action for such.

<u>APPLICATION FOR INJUNCTIVE RELIEF</u>

17.   To the extent necessary, Plaintiff incorporates herein by reference all factual allegations contained in paragraphs 9 through 16 above, the same as though recited verbatim.

18   Plaintiff will be irreparably harmed, for which he has no adequate remedy at law, unless a temporary restraining order is issued by the Court, as requested herein, in that Defendants will continue to retain and use his confidential Bank records in the action in derogation of Plaintiff's constitutional rights of due process and equal protection under the law and will continue to perpetrate their conspiracy to interfere with Plaintiff's civil rights ; refuse to return and exclude from use in the action Plaintiffs documents taken from his office and wrongfully obtained from Frost National Bank in violation of Plaintiff's rights therein; and neglect to prevent conspiratorial wrongs. Without the Court issuing a temporary restraining order compelling Defendants to immediately (1) return all documents removed from Plaintiff's office, including checks, and wrongfully obtained from Frost National Bank; (2) exclude any use and/or mention of any of Plaintiff's Bank Records by Defendants in the action; (3) restrain and enjoin Defendants from prosecuting the action based on any information contained in the documents taken from Plaintiff's office and/or obtained from Frost National Bank; and (4) restrain and enjoin Defendants from continuing to neglect the prevention of conspiratorial wrongs in the prosecution of the action, Defendants will continue to retain possession of and use the documents taken from Plaintiff's office and wrongfully obtained from Frost National Bank, continue to prosecute the action based on information contained in the documents removed from Plaintiff's office and obtained from Frost National Bank, and continue to neglect the prevention of conspiratorial wrongs. Said consequences will cause immediate and irreparable harm to occur to Plaintiff unless Defendants are immediately restrained and enjoined as requested

herein.

19.     Ergo, Plaintiff file this, his application for a temporary restraining order, temporary injunction and a permanent injunction, pursuant to not only the general principles of equity, but pursuant to this Court's inherent jurisdiction to issue injunctive relief in connection with claims brought pursuant to 42 U.S.C.A. §§ 1983, 1985 and 1986, as well as pursuant to § 65.011 of the Texas Civil Practice and Remedies Code, in that Defendants, together with their attorneys, servants, agents, employees, privies and assigns, are continuing to  retain and use his confidential Bank records in the action in derogation of Plaintiff's constitutional rights of due process and equal protection under the law and will continue to perpetrate their conspiracy to interfere with Plaintiff's civil rights ; refuse to return and exclude from use in the action Plaintiffs documents taken from his office and wrongfully obtained from Frost National Bank in violation of Plaintiff's rights therein; and neglect to prevent conspiratorial wrongs, for which injunctive relief is hereby sought. Such actions by said Defendants would tend to render a judgment in this case ineffectual and may cause greater damages to Plaintiff.  The conduct and threatened conduct engaged in by said Defendants, together with their attorneys, agents, servants, employees, privies and assigns, will cause immediate and irreparable injury to Plaintiff through the loss of his constitutionally protected rights in his bank records and license to practice law.  Plaintiff is entitled to the relief requested herein, insofar as he is entitled to the return of the stolen documents, the return and exclusion of the Frost National bank Records from use in the action; and that Plaintiff is entitled to the entry of a temporary injunction for the same relief as requested in the application for a temporary restraining order.

20.     Accordingly, Plaintiff requests the immediate imposition of a temporary

restraining order, immediately enjoining and restraining Defendants, their attorneys, agents, servants, employees, privies and assigns, and anyone acting by and/or through them, ordering them to immediately (1) return all documents removed from Plaintiff's office, including checks, and wrongfully obtained from Frost National Bank; (2) exclude any use and/or mention of any of Plaintiff's Bank Records by Defendants in the action; (3) restrain and enjoin Defendants from prosecuting the action based on any information contained in the documents taken from Plaintiff's office and/or obtained from Frost National Bank; and (4) restrain and enjoin Defendants from continuing to neglect the prevention of conspiratorial wrongs in the prosecution of the action, until further order of this Court. Plaintiff requests that such temporary restraining order be issued, ex parte, by this Court immediately, without prior notice to Defendants, their attorneys, agents, servants, employees, privies and assigns, due to the immediate and irreparable harm which may occur as a consequence of the continued above-described actions of Defendants through the continuation of the  actions described herein above in violation of Plaintiff's rights described herein.   This application for a temporary restraining order and temporary injunction seeks to maintain the status quo between the parties and, in equity and in justice, should be granted by this Court by its prompt intervention to prevent any irreparable harm caused by further actions by Defendants, as described herein above.

21.      Furthermore, Plaintiff respectfully request that this Court, subsequent to notice and hearing, impose a temporary injunction against Defendants, their attorneys, agents, servants, employees, privies and assigns, and anyone acting and/or claiming by and/or through them, ordering them to immediately (1) return all documents removed from Plaintiff's office, including checks, and wrongfully obtained from Frost National Bank; (2) exclude any use and/or mention of any of Plaintiff's Bank Records by Defendants in the

action; (3) restrain and enjoin Defendants from prosecuting the action based on any information contained in the documents taken from Plaintiff's office and/or obtained from Frost National Bank; and (4) restrain and enjoin Defendants from continuing to neglect the prevention of conspiratorial wrongs in the prosecution of the action, until further order of this Court.

22.    Plaintiff asserts that without this Court's equitable intervention granting a temporary restraining order as requested herein, together with the temporary injunction and permanent injunction as requested herein, he will suffer immediate and irreparable injury and harm for which he has no adequate remedy at law, as set forth herein above.

23.    Accordingly, Plaintiff respectfully requests that a temporary restraining order be issued without notice to Defendants, ordering said Defendants, their attorneys, agents, servants, employees, privies and assigns, and anyone acting by and/or through them, to immediately (1) return all documents removed from Plaintiff's office, including checks, and wrongfully obtained from Frost National Bank; (2) exclude any use and/or mention of any of Plaintiff's Bank Records by Defendants in the action; (3) restrain and enjoin Defendants from prosecuting the action based on any information contained in the documents taken from Plaintiff's office and/or obtained from Frost National Bank; and (4) restrain and enjoin Defendants from continuing to neglect the prevention of conspiratorial wrongs in the prosecution of the action, until further order of this Court.  Plaintiff further requests that Defendants be cited to appear and show cause, and that upon such hearing, a temporary injunction be issued ordering Defendants, their attorneys, agents, servants, employees, privies and assigns, and anyone acting by and/or through them, to immediately (1) return all documents removed from Plaintiff's office, including checks, and wrongfully obtained from Frost National Bank; (2) exclude any use and/or mention of any of Plaintiff's Bank

Records by Defendants in the action; (3) restrain and enjoin Defendants from prosecuting the action based on any information contained in the documents taken from Plaintiff's office and/or obtained from Frost National Bank; and (4) restrain and enjoin Defendants from continuing to neglect the prevention of conspiratorial wrongs in the prosecution of the action, until further order of this Court; that a permanent injunction be ordered on the final trial of this cause enjoining said Defendants, their attorneys, agents, servants, employees, privies and assigns, and anyone acting by and/or through them, from engaging in the conduct  described herein above for which injunctive relief is hereby sought.

### Causes of Action

24.     Plaintiff hereby asserts his cause of action pursuant to 42 U.S.C.A § 1983 in connection with the denial of constitutional due process in the prosecution of the action as a result of the violation of the notice provisions of the TRCP pertaining to mandatory notice to Plaintiff when CFLD was obtaining discovery from Frost National Bank concerning confidential bank records, as cancelled checks are considered confidential, same being based on stolen records; denial of due process by CFLD circumventing Plaintiff's rights to a motion to quash hearing concerning CFLD subpoenaing the Frost National Bank records, which were obtained and filed in the District Clerk's office of Harris County, Texas in response to Plaintiff's motion for summary judgment without Plaintiff's notice or consent; the refusal of Judge Robison to enforce the exclusion ruling announced by him on September 10, 2007 after he received the exparte conspiracy communication from Ploch with the knowledge and assistance of Molleston and Bersch on behalf of CFLD and State Bar; Refusing to allow Plaintiff a jury trial after one was demanded and paid for by Plaintiff; as well as the equal protection deprivations associated therewith; inter alia. Plaintiff seeks actual damages of $ 5 ,000,000.00 plus attorneys fees and punitive damages.

25.     Plaintiff hereby asserts his causes of action pursuant to 42 U.S.C.A.§§1985 and 1986 as a consequence of the conspiracy of the Defendants to interfere with the civil rights of Plaintiff in connection with their conspiratorial action to deprive Plaintiff of equal protection and due process under the law as described herein above; Defendants conspiratorial actions to interfere with the judicial process and related matters; Defendants' conspiratorial actions to hinder authorities; and the neglect of Judge Robison to prevent the knowing violations complained of herein under § 1985. Plaintiff is the subject of the wrongful conduct and has suffered damage to his person and property rights in his confidential documents taken from his office and those obtained from his Bank, as well as his license to practice law, which the conspirators seek to have taken from him.


26.     Plaintiff hereby asserts his cause of action against Defendants herein, jointly and/or severally, for **conversion of Plaintiff's confidential bank records and other personal and confidential documents and records improperly obtained by Ploch, State Bar, CFLD and Molleston; and conspiracy in connection therewith.**

27.     Plaintiff hereby asserts his cause of action against Defendants for **intentional infliction of emotional distress; abuse of process and invasion of privacy; and conspiracy in connection therewith.**

28.     Plaintiff also request that the Court and jury award **punitive damages** in the amount of at least $5,000,000.00 as a consequence of the egregious and outrageous behavior of the Defendants, jointly and/or severally.

29.     Plaintiff also requests that the Court enter a declaratory judgment pursuant to the Texas Declaratory Judgment Act, Texas Civil Practice and Remedies Code, § 37.001, et. seq., declaring the rights of Plaintiff to the possession and confidentiality of his

documents wrongfully obtained by Defendants.

30.     Plaintiff further requests that he recover of, from and against Defendants, jointly and/or severally, his attorneys' fees and reasonable costs incurred in connection herewith pursuant to § 37.009 of the Texas Civil Practice and Remedies Code.

31.     Plaintiff respectfully requests that the Court award him reasonable and necessary attorney's fees as a consequence of the Defendants' actionable conduct alleged herein, or, alternatively, $250,000.00 through the trial of the instant action; together with $100,000.00 in the event this action is appealed to the Fifth Circuit Court of Appeals; together with $100,000.00 in the event an appeal is sought to the United States Supreme Court; for which Plaintiff hereby seeks judgment of, from and against Defendants, jointly and/or severally.

32.     Plaintiff requests that the Court further award prejudgment interest, post-judgment interest, costs of court and such other damages to which Plaintiff may be entitled pursuant to the jury's verdict to be rendered herein.

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests that the Defendants be cited to appear and file an answer herein according to law, and that, upon final trial hereof, Plaintiff recover judgment of, from, and against Defendants, jointly and/or severally, for the actual damages sustained by Plaintiffs as requested herein above, together with such other and further relief, whether at law or in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

George R. Neely

State Bar No. 14861750
540 Heights Boulevard
Houston, Texas 77007
1925 FM 723
Rosenberg, Texas 77471
(713) 521-9666 - Telephone
(713) 522-9669 - Facsimile

**PLAiNTIFF PRO SE**

## JURY DEMAND

Plaintiff George R. Neely hereby demands a jury trial.

_____
George R. Neely

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **GEORGE R. NEELY,** | § | |
| | § | |
| **PLAINTIFF,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. _____** |
| | § | |
| | § | |
| **STATE BAR OF TEXAS, COMMISSION** | § | |
| **FOR LAWYER DISCIPLINE, J.G.** | § | |
| **MOLLESTON, TIMOTHY R. BERSCH,** | § | |
| **VIRGINIA PLOCH AND THE HONORABLE** | § | |
| **JACK H. ROBISON,** | § | |
| | § | |
| **DEFENDANTS.** | § | |

## <u>AFFIDAVIT OF GEORGE R. NEELY</u>

| | |
|---|---|
| **STATE OF TEXAS** | § |
| | §   **KNOW ALL MEN BY THESE PRESENTS:** |
| **COUNTY OF HARRIS** | § |

BEFORE ME, personally appeared the undersigned, GEORGE R. NEELY who under oath states the following:

"My name is George R. Neely.  I am over the age of eighteen (18) years of age; I have never been convicted of a felony or a crime involving moral turpitude; I have personal knowledge of the matters stated herein and they are true and correct; and I am otherwise legally competent to execute this Affidavit."

" Appended hereto, as Exhibits "1" through "37", are true and accurate copies of the following described and identified documents submitted in connection with Plaintiff's Original Complaint and Application For Injunctive Relief :

"Exhibit 1 - is a true and accurate copy of my current Resume;

"Exhibit 2 - is a true and accurate copy of a letter I received from Senator Phil Gramm concerning a Federal Judge position;

" Exhibit 3 - is a true and accurate copy of letters from The University Of Houston pertaining to my involvement in trial advocacy events over the years;

" Exhibit 4 - is a true and accurate copy of the Houston Police Department receipt I received from the officer who took my complaint that Virginia Ploch had burglarized my offices and removed confidential documents from it, including banking documents and copies of Cancelled checks;

" Exhibit 5 - is a true and accurate copy of the Houston Police Department offense Report concerning Virginia Ploch breaking into my office and stealing various confidential materials. The report was the result of me learning that she had burglarized my office and stolen copies of checks when I received a letter from the state bar Of Texas containing a grievance filed by her and copies of the checks stolen from my office, consistent with the affidavits of Mary Ann Knezek and the settlement agreement she signed with me in January of 2003.

"Exhibit 6 - is a true and accurate copy of e-mails from Ms. Ploch to Ms. Knezek concerning their conspiracy to destroy me and my practice of law and in which Ms. Ploch says "I'm ready to take George down anytime";

"Exhibit 7 - is a true and accurate copy of an excerpt from a document written by Kristie Rodriguez, Ms. Ploch's daughter, who worked for me until the summer of 2002, in which she talks about Ms. Ploch's cocaine addiction and alcohol and pill addiction and that she lies about everything and places the blame on anyone other than herself. If her own daughter states that Ms. Ploch lies about everything, then this Court should not believe

Ms.Ploch;

"Exhibit 8 - are  true and accurate copies of e-mails from Ms. Knezek to Ms. Ploch concerning their conspiracy to extort money out of me and destroy my practice of law;

"Exhibit 9 - are true and accurate copies of additional conspiratorial correspondence from Ms. Knezek reflecting her continued desire to extort monies out of me and my family, as she and Ms. Ploch discussed in 2002;

"Exhibit 10 - are true and accurate copies of affidavits signed by Ms. Knezek in which she describes Ms. Ploch's admissions against interest of stealing copies of the subject checks from my office without my knowledge and permission;

"Exhibit 11 - is a true and accurate copy of a TRO precluding Ms. Ploch and anyone acting by and through he from having the copies of my checks she gave the State Bar Of Texas;

"Exhibit 12 - is a true and accurate copy of a show cause order for Mr. Ploch to appear before Judge George Hanks for violating exhibit 11;

"Exhibit 13 - is a true and accurate copy of a letter to Mr. Molleston from me in September of 2002 requesting the return of stolen checks given him by Ms. Ploch;

"Exhibit 14 - is a true and accurate copy of a fax from me in October of 2002 to Mr. Leo Suter at the State Bar Of Texas attaching the exhibit 11 TRO and again requesting the return of the stolen checks;

"Exhibit 15 - is a true and accurate copy of a letter from Mr. Molleston to me stating that he would file a motion to compel production of documents if I did not agree to produce documents. No such motion was ever filed as threatened. He then mailed a bogus subpoena (it failed to comply with the requirements of Rule 176 Texas Rules Of Civil

Procedure) to Frost National Bank for my IOLTA records without giving me the notice required under Rules 21,21a,21b and 205, TRCP;

"Exhibit 16 - is a true and accurate copy of the sham subpoena used by Mr. Molleston to improperly obtain copies of IOLTA account records from Frost National Bank. Said document is not a legitimate subpoena, in that it was not created and issued in compliance with Rules 176 of the Texas Rules Of Civil Procedure since it was mailed and not served, no officers return was executed and filed with the Court and no notice was filed with the Court and served on all parties, among other defects. After Mr. Molleston's improper conduct was discovered, he falsely claimed that the Finance Code, § 59.006, gave him permission to obtain bank records without notice to me. The Texas Finance Code is not applicable hereto based on *British International Insurance Company, LTD v. Seguros La Republica, S.A. 200 F.R.D. 6 (W.D. Tex 2000),* as well as other analyses;

"Exhibit 17 - is a true and accurate copy of a letter from Mr. Molleston claiming he is not required to give me notice of a discovery subpoena he sent to Frost National Bank in the pending disciplinary proceeding and admits that no notice was not given. The only notice given to me that Mr. Molleston had obtained my IOLTA account records was after I filed a motion for summary judgment and he had them in his possession and filed them with the District Clerk of Harris County, Texas and made them public record in violation of me and my client rights of privacy and confidentiality;

"Exhibit 18 - is a true and accurate copy of correspondence from Frost National Bank to Mr. Molleston in March 2004, confirming the receipt by the State Bar Of Texas of my IOLTA account records pursuant to the bogus subpoena, exhibit 16, and reflecting on Mr. Molleston's March 10, 2004 letter, that he was obtaining them in connection with

pending litigation against me;

"**Exhibit 19** - a true and accurate copy of the **settlement agreement** signed by **Ms. Ploch** in which she **agrees to return checks and other documents taken from my office**. There is no mention of her making copies when she was paid for her own use, as is now contended by the Commission For Lawyer Discipline. If she really made copies for her own use when she received the checks, why would she be agreeing to returned checks removed from my office. The clear implication is that she is lying, as her own daughter confirms, about everything, and that she stole the checks from my office when she had no authority to be there;

"Exhibit 20 - are true and accurate copies of letters to the State Bar Of Texas from the Ploch's stating their desire not to prosecute their grievances against me further;

"Exhibit 21 - is a true and accurate copy of a letter from Judge David West transmitting to me the checks stolen from my office by Ms. Ploch, in compliance with paragraph 10 of exhibit 19. If the Court compares the copies of the checks attached to the grievance filed with the State Bar Of Texas, with those contained in exhibit 20, they are the same, further supporting my statements that the checks were stolen;

"Exhibit 22 - a true and accurate copy of the affidavit of Tom Prude filed with the 164 District Court Of Harris County, Texas, in Cause No. 2003-63182 by me nearly 2 years ago, containing the only unchallenged expert opinion(proffered by CFLD in support of its motion for summary judgment) that no commingling occurred and that I complied with all other provisions of Disciplinary Rule 1.14;

"Exhibit 23 - a true and accurate copy of Disciplinary Rule 1.14, together with comments and annotations;

"Exhibit 24 - are true and accurate excerpts from the hearing herein on September 10, 2007, in which Judge Robison agreed that CFLD had violated the Texas Rules Of Civil Procedure and would not be able to use the Frost National Bank records. At that hearing, the CFLD requested that Judge Robison disbar me, which cannot be stayed on appeal. So, even if I could appeal the judgment of disbarment, I could not practice law during that period of time. I have a 6 year old son with autism and verbal apraxia and a development delayed daughter of 3 ½ who require therapy daily to try to develop toward a normal life;

"Exhibit 25 - is the affidavit of Betty Bradley, the Assistant Director of the Continuing Legal education Division Of The University Of Houston Law Foundation ("UH-CLE"), in which she identifies and attaches the certification UH-CLE received from the State Bar Of Texas ("Bar") in connection with the Advanced Civil Litigation Seminar sponsored by UH-CLE on May 5-6, 2005,and describes how UH-CLE obtains approval from the Bar of the course material before the seminar is conducted. She also attaches a true and accurate copy of the seminar materials authored and delivered by Scott G. Burdine and Carl D. Kulhanek, Jr., entitled Current Ethical Issues For The Litigation Attorney, in which the structure of the disciplinary rules are discussed. The word **"should"** is described to be conduct for which a lawyer can use his **discretion**. The word should is used in connection with official comments to Rule 1.14 concerning a lawyer writing checks from his IOLTA account directly for his personal debts. The use of the word should means that a lawyer is not prohibited from writing checks from his IOLTA account to pay for his debts so long as it is from his money in the account;

"Exhibit 26 - is a true and accurate copy of a letter to the State Bar Of Texas from Mary Ann Knezek confirming that Ms. Ploch stole the subject checks from my office;

"Exhibit 27 - is an affidavit signed by Arthur Hernandez, my computer technician, describing that the employment agreement created on the computer used by Ms. Ploch during her employment by me and claimed by her and her husband in Cause No.2003-63182 to have been signed in June of 2001, could not have been signed then, since it was not created until May of 2002, further proving that Ms. Ploch is a liar and further impeaches her credibility which a jury should have an opportunity to hear and decide for itself that the checks on which Petitioner bases its complaint were stolen and they and the information therein cannot be used;

"Exhibit 28 - is a true and accurate copy of Ginny Ploch's exparte letter to Judge Robison in October 2007, just before the hearing on the 17th of October. The letter was obviously written to Judge Robison, and not served on me (similar to Molleston not serving notice to me of the "subpoena" sent to Frost National Bank), with the intention of persuading Judge Robison to alter his ruling announced by him on September 10, 2007, that he would exclude the Frost National Bank records as fruit of the poisonous tree. When I discovered that said letter had been delivered toJudge Karen Brown and others at 515 Rusk, I requested a complete copy of same, together with the attachments, from Judge Robison. Said exparte letter seeks to seeks to both prejudice me with Judge Robison without presenting Ms. Ploch at an evidentiary hearing on October 17,2007, and subjecting her to cross examination, and persuade Judge Robison on the issue that the checks/Bank Records were the fruit of the poisonous tree and to reverse his announced ruling on September 10, 2007,  that all bank records from Frost National Bank would be excluded. Judge Robison did not mention at the October 17, 2007 hearing that he had received Ms. Ploch's letter and attachments , and did not give me a copy of same at that hearing and

said exparte letter is not on file with the District Clerk's office in the record of this lawsuit. Molleston, who also received a copy of said letter, mentioned nothing about it at the October 17, 2007 hearing. I believe that such exparte contact by Ms. Ploch was improper, as she sought to change influence the Judge's ruling about the fruit of the poisonous tree exclusion announced by him on September 10, 2007. That is precisely the reason she sent it to Judge Robison just before the hearing on October 17, 2007 and intentionally failed to send me copies of the letter and attachments. She did not want me to be able to respond with the truth at the hearing. I believe that the State Bar lawyers were involved in the exparte contact, because otherwise Ms. Ploch would not have known of the hearing on the 17th in order to time the delivery of her letter to be just before the hearing and she would not have known of the record statements of Judge Robison on September 10 and would not have known of the Bankruptcy Pleadings without the participation of Molleston and Bersch. Finally, Ploch had not done anything in connection with Cause No. 2003-63182 since March of 2003, when a grievance meeting was held at the State Bar, until, almost 5 years later, when she sends a letter out of the blue with information in it she could have only obtained from Molleston and Bersch;

"Exhibit 29 - is a true and accurate copy of a temporary restraining order and show cause order("TRO") I was forced to obtain when The State Bar Of Texas and The Commission For lawyer Discipline and several others conspired to have me suspended in 1997, by contriving claims against me, similar to the contrived claims of Ms. Ploch and the CFLD in Cause No. 2003-63182. The State Bar Lawyers conspired with a Mary Ann Strahan, who was a Defendant in litigation filed by my client, and others Defendants associated with her, to have me either suspended or disqualified from prosecuting the

lawsuit against her, Agfa , Bayer and others. When they were unable to persuade Judge Katy Kennedy to disqualify my from the underlying lawsuit, they went to the State Bar Lawyers who had filed the Glass grievance action against me which led to my wrongful suspension discussed in the opinion at *Neely v. Commission For Lawyer Discipline, 976 S.W.2d 824 (Tex. App. - Houston [1ˢᵗ Dist.] 1998)*. The TRO was necessitated buy the State Bar attorneys engaging in the actionable and improper conduct of contacting all of my opposing counsel in my cases pending at that time to give them misinformation that I had been suspended and that I was not to try any lawsuits which were set for trial over the next three months. The truth was that Judge Wilson had given me 3 months to either try or settle all of the cases then pending in which I was trial counsel. The State Bar attorneys were trying to prevent me from trying or settling those cases so I would have no money for my appeal. All of those cases were continued from their trial settings. The current situation with Ms. Ploch is identical to the Mary Ann Strahan situation discussed herein above, in that Ms. Ploch and her husband were in possession of stolen documents and I was winning in the litigation against them, so they took the documents stolen from my office and gave them to the State Bar attorneys to use to file a grievance against me  and sue me in an attempt to extort money out of me and prevent  me from suing them. This is not the first time I have experienced the State Bar grievance process being used to assist someone in other litigation;

"Exhibit 30 - is a true and accurate copy of the extended Temporary Restraining Order issued in Case No. 1997-51928, discussed herein in connection with exhibit 29;

"Exhibit 31 - is a true and accurate copy of the affidavit of my client Billy Strahan filed in Cause No. 1997-51928, which resulted in exhibits 29 and 30 hereto;

"Exhibit 32 - is a true and accurate copy of my affidavit filed in Cause No.1997-51928, which resulted in exhibits 29 and 30 hereto;

"Exhibit 33 - is a true and accurate copy of the petition in Cause No. 1997-51928, in which the conspiracy charges against the State Bar are described, which resulted in exhibits 29 and 30 hereto;

"Exhibit 34 - is a true and accurate copy of the Final Judgment entered in Case No.1994-04380, the first lawsuit filed against me by the State Bar and which I won to a jury. In the hallway after the trial was over, an attorney from the State Bar Chief Disciplinary Counsel's Office in Austin, Texas approached me in the "get in your face" manner and told me that they were going to do anything they could to get my license and bring me down;

"Exhibit 35 - is a true and accurate copy of the amended disciplinary petition in Cause No.1994-04380;

"Exhibit 36 - is a true and accurate copy of the counterclaim I filed against the Commission in Cause No.1994-04380. After I won the trial, Judge Flowers of Austin said that he thought I had a good claim against the State Bar;

"Exhibit 37 - is a true and accurate copy of the public filing of a private reprimand by the Commission in Cause No.1994-04380, in violation of the terms of a private reprimand;

" The State Bar Of Texas has always taken a scorched earth policy with me because I won the first trial with them in 1994, sued them and the Commission in 1997 and reversed the wrongful suspension of 1997. Among the wrongful conduct committed by the State Bar lawyers and the Commission is (1) taking admittedly stolen evidence,(2) "issuing" a bogus subpoena to my bank without giving notice to me required by the rules, (3) filing false

pleadings with the Court representing that the Financial Code allowed them not to notice me of their actions to obtain records from my bank and (4) misrepresenting to the Court that Ms. Ploch made copies of the checks on her own for her records after she had agreed to return the checks she had "taken" from my office.

"Based on the conduct described herein above, I request that a temporary restraining order be entered as requested in my application for same; that a temporary injunction be issued as requested by me in my application for same; and that upon trial, a final injunction be entered as requested by me in my application for same.

"Further Affiant Sayeth not."

George R. Neely

SUBSCRIBED AND SWORN TO BEFORE ME, by the said Notary Public on this the __24__ day of December, 2007, to certify which witness may hand and seal of office.

My Commission Expires: __8-11-2010__          __Pat Baker__

Notary Public in and for the State of Texas

PAT BAKER
Notary Public
STATE OF TEXAS
My Comm. Exp. 08-11-2010